# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### MAY SESSION, 1998



FILED

August 21, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 02C01-9710-CR-00404 |
| | ) | |
| Appellee, | ) | |
| | ) | SHELBY COUNTY |
| V. | ) | |
| | ) | |
| | ) | HON. CHRIS CRAFT, JUDGE |
| MARIO SCOTT, | ) | |
| | ) | |
| Appellant. | ) | (THEFT; AGGRAVATED ASSAULT) |

FOR THE APPELLANT:

**A.C. WHARTON**
District Public Defender

**TONY N. BRAYTON**
Assistant Public Defender
Criminal Justice Center, Suite 201
201 Poplar Avenue
Memphis, TN 38103

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**PETER M. COUGHLAN**
Assistant Attorney General
2nd Floor, Cordell Hull Building
425 Fifth Avenue North
Nashville, TN 37243

**JOHN W. PIEROTTI**
District Attorney General

**DANIEL S. BYER**
Assistant District Attorney General
Criminal Justice Center, Suite 301
201 Poplar Avenue
Memphis, TN 38103

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant, Mario Scott, appeals as of right his convictions of aggravated assault and theft of property over the value of one thousand dollars following a jury trial in the Shelby County Criminal Court. The trial court sentenced Defendant as a Range I Standard offender to four (4) years confinement on the theft conviction and six (6) years confinement on each aggravated assault conviction. The trial court ordered the two (2) aggravated assault convictions to be served concurrently, but consecutive to the theft conviction, for an effective sentence of ten (10) years. Defendant presents the following two (2) issues on appeal:

1. Whether the evidence was sufficient to convict Defendant of aggravated assault; and

2. Whether the trial court properly ordered Defendant's aggravated assault convictions to be served consecutive to his theft conviction.

We affirm the judgment of the trial court.

The facts presented at trial reveal that on March 22, 1995, Marcus Wilson was driving a blue car when it was stopped by the police. The Defendant, Mario Scott, was a passenger in the vehicle. Marcus Wilson testified at trial that he believed that the car belonged to Defendant and that Defendant offered to sell the car to him for $1700.00.

Officer Halfacre of the Memphis Police Department was previously given a photo of Defendant and the blue vehicle from the sergeant in auto theft on the morning of March 22, 1995. Halfacre was told that the vehicle Defendant was

driving was stolen and that the vehicle identification number (VIN) had been changed. The vehicle was parked at the home of Defendant's mother. Officer Halfacre was told to wait until Defendant got into the vehicle before attempting to make a stop.

About 2:20 that afternoon, Officer Halfacre was observing traffic in front of Northside High School when Defendant and Marcus Wilson passed by heading westbound in the stolen vehicle. Officer Halfacre then notified Officers Boyce and Murray that the stolen car had just passed her going west on Northside. The three officers followed it to Breedlove and Vollintine where they attempted to pull the vehicle over. The driver, Marcus Wilson, pulled over to the curb and remained in the car. Officer Halfacre pulled crossways in front of the vehicle so that it could not pull away. Officer Halfacre exited her car and Defendant got out of the stolen vehicle and pointed a nine millimeter automatic handgun at Officers Halfacre and Murray.

Officer Boyce pulled in directly behind the stolen vehicle and was attempting to exit his police cruiser when his driver's side door was hit by Officer Murray's cruiser, causing Officer Murray's passenger side window to shatter. Officer Boyce's door bounced back and hit him in the chest, stunning him momentarily. By the time Officer Boyce recovered from the blow, Defendant had escaped on foot.

Hearing the window of Officer Murray's car shatter, Officer Halfacre believed that a gunshot had been fired by Defendant at Officer Murray. Halfacre broadcast over the radio that her partner had been shot at by Defendant. Halfacre ran over to

Murray's cruiser to see if she had been shot. After discovering that a gunshot was not the cause of the broken window and that Officer Murray was unharmed, Officer Halfacre realized that Defendant had taken off running. Officer Boyce chased after Defendant on foot. Defendant escaped but was later captured.

Officers Halfacre and Murray testified at trial that Defendant pointed a nine millimeter automatic handgun at them over the roof of the stolen vehicle. Officer Halfacre testified that she really "believed she might be fired at by Mario Scott." Neither Marcus Wilson nor Officer Boyce were able to testify that they saw Defendant with a gun on March 22, 1995.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence presented at trial was insufficient to support his convictions of aggravated assault. When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosection, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). This standard is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Because a verdict of guilt removes the presumption

of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Williams, 914 S.W.2d 940, 945 (Tenn. Crim. App. 1995) (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)); State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.), perm. to appeal denied, id. (Tenn. 1987). Nor may this court reweigh or reevaluate the evidence. Cabbage, 571 S.W.2d at 835. A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. Grace, 493 S.W.2d at 476.

In this case, the State must prove that Defendant intentionally or knowingly committed an assault as defined in Tennessee Code Annotated section 39-13-101, and used or displayed a deadly weapon. Tenn. Code Ann. § 39-13-102(a)(1)(B).

Officer Halfacre, a ten (10) year veteran of the police department, unequivocally stated that when the stolen car was pulled over, Defendant stepped out of the passenger side of the car and pointed an "automatic weapon" over the roof of the car at the officers. Officer Halfacre was standing behind her vehicle with an unobstructed view of Defendant, who was standing only fourteen (14) feet away. Officer Murray, an eight (8) year veteran of the police department, also testified that

Defendant had a gun and pointed it at the officers. Officer Murray believed that she had been shot at when her window shattered. She proceeded to lay down on the seat of her cruiser in order to avoid being shot by Defendant. Officer Halfacre also believed that Officer Murray had been shot at by Defendant. Officer Halfacre even went so far as to broadcast over her radio that her partner had been shot at by Defendant. Officer Boyce and Marcus Wilson testified that they never saw Defendant with a gun.

When viewing the evidence in the light most favorable to the State, the jury justifiably could have found beyond a reasonable doubt that Defendant committed aggravated assault. The jury heard conflicting stories and chose to credit the testimony of Officers Murray and Halfacre. The resolution of discrepancies in testimony, whether caused by an intentional attempt to mislead the jury, or by variations in witness perception, is a matter for the jury to decide. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984). The jury had more than enough evidence to convict Defendant of aggravated assault. This issue is without merit.

## II. CONSECUTIVE SENTENCING

Defendant does not contest the length of his sentences, but he does challenge the manner in which they are to be served. The trial court sentenced Defendant to four (4) years confinement on the theft conviction and six (6) years confinement on each aggravated assault conviction. The trial court ordered the two (2) aggravated assault convictions to be served concurrently, but consecutive to the theft conviction

for an effective sentence of ten (10) years. Defendant argues that the trial court erred in ordering him to serve his convictions for aggravated assault consecutive to his conviction for theft. Defendant contends that the sentences should have been ordered to run concurrently rather than consecutively.

When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). There are, however, exceptions to the presumption of correctness. First, the record must demonstrate that the trial court considered the sentencing principles and all relevant facts and circumstances. Id. Second, the presumption does not apply to the legal conclusions reached by the trial court in sentencing. Third, the presumption does not apply when the determinations made by the trial court are predicated upon uncontroverted facts. State v. Smith, 898 S.W.2d 742, 745 (Tenn. Crim. App. 1994), perm. to appeal denied, id. (Tenn. 1995).

Our review requires an analysis of: (1) The evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's

potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, & -210; see State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the facts and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). Upon review of the record, we find that the trial court followed proper statutory sentencing procedure, and therefore, review by this Court is de novo with a presumption of correctness.

Consecutive sentences should be imposed only after the proof establishes (1) that the terms imposed are reasonably related to the severity of the offenses committed; (2) the sentence is necessary to protect the public from further criminal acts by the offender; and (3) that the defendant meets at least one of the criteria as set forth in Tennessee Code Annotated section 40-35-115(b). State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995).

The trial court recognized Defendant's long-term pattern of criminal activity. See Tenn. Code Ann. § 40-35-115(b)(2). Defendant's criminal record includes convictions for assault, receiving stolen property, driving on a revoked license, and unlawful possession of a weapon. While on bond for the revoked license and weapons offenses, Defendant was convicted for driving on a revoked license and

reckless driving. Defendant then received two (2) more convictions for driving on a revoked license. Defendant also has three (3) convictions for selling cocaine or possession of cocaine with intent to sell. Defendant was on parole for those convictions when he committed the present offenses. The trial court found Defendant's repeated violations of the law to be a "steady stream of crimes . . . with apparently no control." We agree with the trial court and find that this proof is sufficient to support a finding that Defendant's criminal activity has been extensive. See, e.g., State v. Chrisman, 885 S.W.2d 834,839 (Tenn. Crim. App. 1994).

In ordering consecutive sentencing, the trial court explicitly stated, "I've also considered whether or not that's a sentence disproportionate to the gravity of these offenses pursuant to case law." The trial court found the crimes in the instant case to be severe. Police officers attempted to stop Defendant because he was in a stolen car, and as a result, Defendant pulled a gun on the officers. The trial court also found Defendant to have "a conscious disregard for the safety of citizens and a disregard for the courts and orders of the court." Certainly it can be reasoned from the foregoing statements that the trial court found consecutive sentencing to be reasonably related to the severity of the crimes and also found it necessary to protect the public from future crimes by this Defendant. See Wilkerson, 905 S.W.2d at 939. We agree with the trial court's finding that consecutive sentencing is appropriate in this case. This issue is without merit

Based on all the foregoing, the judgment of the trial court is affirmed.

-10-

_____
THOMAS T. WOODALL, Judge


CONCUR:



_____
JOHN H. PEAY, Judge



_____
PAUL G. SUMMERS, Judge